UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN NAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:25-cv-01287-SEB-CSW |
| | ) | |
| T. ALLEN Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

John Naylor's petition for a writ of habeas corpus seeks relief from his conviction and sanctions in prison disciplinary case ISR 25-03-0936. For the following reasons, his petition is denied, and this action is dismissed with prejudice.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

On March 14, 2025, Officer C. Courtney heard the sound of someone vomiting and went to Cell 3-1R to investigate. Dkt. 12-1 (conduct report). Mr. Naylor was assigned to that cell. *Id.* When Officer Courtney approached, he saw that Mr. Naylor had a curtain in front of his cell door. *Id.* The officer pulled back the curtain and saw Mr. Naylor throwing up. *Id.* Mr. Naylor did not respond to anything Officer Courtney asked him. *Id.* The officer observed Mr. Naylor "stumbling about" and having "pinpointed eyes." *Id.* Mr. Naylor was "mumbling something to himself" that was incomprehensible. *Id.* Officer Courtney called yard staff, who escorted Mr. Naylor to the infirmary, where he was placed on an intoxication hold "per medical." *Id.* Officer Courtney charged Mr. Naylor with offense 231, intoxicating substance. *Id.*

Later that day, LPN Jada Ray conducted a urinalysis on Mr. Naylor due to "Unobserved suspected intox." Dkt. 14 at 1 (sealed). Mr. Naylor tested negative for all screened substances, including amphetamines, barbiturates, benzodiazepines, buprenorphine, cocaine, methadone metabolite, MDMA/ecstasy, methamphetamine, opiates, oxycodone, PCP/phencyclidine, and THC/marijuana. *Id.*

The next day, Mr. Naylor filed a grievance in which he claimed to suffer from "G.E.R.D. and I.B.S.D." Dkt. 12-6 at 1. In the grievance, Mr. Naylor stated that he "passed the urine screen" and that "vomiting is normal with G.E.R.D." *Id.* He requested that his drug test results be provided to his caseworkers. *Id.* Mr. Naylor also mentioned a pending lawsuit he had filed against "Corizon and Dr. John Mershon." *Id.*

On March 29, Mr. Naylor filed a grievance appeal in which he reiterated his claims and alleged that his disciplinary charge was retaliatory. Dkt. 12-6 at 2. Mr. Naylor also filed a health care request, requesting "test results" and claiming that he "was wrongly taken to intox hold by a

C.O.'s word who hadn't spoken to me or seen me before sending me to medical." Dkt. 1-1 at 21; dkt. 13 (sealed).

On April 14, prison staff notified Mr. Naylor that he had been charged with offense B-231, intoxicating substance. Dkt. 12-4. He was advised of his rights and given a copy of the conduct and screening reports. *Id.* Mr. Naylor pled not guilty and requested a statement from LPN-Ray to address whether he passed the urinalysis. *Id.* He also requested a video review. *Id.*

The following week, disciplinary hearing officer ("DHO") J. Ernest reviewed the security camera footage from the area around Mr. Naylor's cell on March 14. Dkt. 12-9. Mr. Naylor was not permitted to view the video out of concern for the "safety and security of the Facility." *Id.* The video report stated:

> I, Sgt. J. Ernest, reviewed footage for case ISR-25-03-000936. At 1:38 pm, Ofc. Courtney is seen approaching cell 3-1R and speaking to the II inside the cell. At 1:39pm, yard staff arrive on unit and approach 1-3R. Sgt. Lunsford is seen speaking to the II inside the cell and goes inside with Ofc. Patz. At 1:40pm, II Naylor is seen stumbling out of his cell with Sgt. Lunsford behind him. As they exit the range, vomit is seen on the shirt and face of II Naylor.

*Id.*[1]

At his disciplinary hearing, Mr. Naylor once again pled not guilty, but declined to make any statement in his defense. Dkt. 12-8. The DHO noted that Mr. Naylor's caseworker sent documents that Mr. Naylor wanted to have submitted into evidence. *Id.* After considering the staff reports, video evidence, drug test results, and grievances, the DHO found Mr. Naylor guilty as charged. *Id.* The reason given for the DHO's decision was: "I/I Naylor is seen on camera stumbling with vomit on him. When taken to medical, nursing staff deemed I/I Naylor intoxicated and placed

[1] The Court's review of the video evidence is consistent with that of the DHO, although the Court would describe Mr. Naylor's movement out of his cell as unsteady and unbalanced.

him on an intoxication hold." *Id.* The DHO imposed a custodial sanction of a 15-day loss of earned credit time. *Id.*

Copies of Mr. Naylor's appeals were submitted with his petition, but the Department of Correction has no record of receiving either appeal. Dkt. 1-1 at 2-3. Nonetheless, the Warden does not assert failure to exhaust administrative remedies as a defense.

## III. Discussion

Mr. Naylor's claims are discerned as: 1) the conduct report was retaliatory; 2) the investigation was corrupt; 3) he lost his job because of the conduct report; and 4) there was insufficient evidence. Dkt. 1 at 3-7.

### A. Retaliation

Mr. Naylor first argues that the reporting officer wrote the conduct report in response to his grievance about medical treatment. "Prisoners have a right to be free from retaliation by prison officials but ... the procedural requirements of *Wolff* adequately protect prisoners from fraudulent charges." *Wilson v. McBride*, 93 F. App'x 994, 996 (7th Cir. 2004) (citing *McPherson v. McBride*, 188 F.3d 784, 787 (7th Cir. 1999); *McKinney v. Meese*, 831 F.2d 728, 733 (7th Cir. 1987)). As discussed further in this Order, Mr. Naylor has not demonstrated a due process violation, so his retaliation claim must also fail.

### B. Corruption and Loss of Job Claims

Mr. Naylor alleges that Officer Courtney and the DHO lied in their conduct report and video review, respectively. Although his job loss was not imposed as a sanction in this case, he contends that because he was found guilty, he lost his prison job. These claims are not viable habeas claims.

If a habeas petition does not challenge the fact or duration of the petitioner's sentence, it does not state a viable basis for relief. *Washington v. Smith*, 564 F.3d 1350, 1351 (7th Cir 2009). Vague allegations of corruption are not protected under *Wolff.* Mr. Naylor's assertion that Officer Courtney was not present at the time of the incident and the officer therefore "lied" in the conduct report, is disproven by the video evidence. Officer Courtney did not enter Mr. Naylor's cell, but he was present. Even if prison guards are alleged to have engaged in fraudulent conduct, as long as the petitioner received notice of the allegations, an opportunity to be heard and to present evidence, and a neutral decision-maker records his findings, the Court's only remaining role is to determine whether there was some evidence to support the disciplinary conviction. Similarly, the loss of a prison job has no bearing on the fact or length of an inmate's incarceration, so that claim is not cognizable in this case. These claims warrant no further discussion.

**C. Some Evidence**

As noted above, Mr. Naylor was charged with 231, intoxicating substance. That offense is defined in relevant part as "being under the influence of any intoxicating substance." Dkt. 12-13 at 8. Mr. Naylor next argues that because the urinalysis came back negative, there was no evidence that he was intoxicated.

In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) (same).

Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011). The Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Even though the urinalysis results were negative, there was additional evidence in the record that supported the charge. The reporting officer observed Mr. Naylor stumble in his cell and fail to respond to the officer's questions. Dkt. 12-1. Mr. Naylor was mumbling something to himself that the officer could not understand. *Id.* "Pinpointed eyes" were also observed, which is understood to mean constriction of the pupils. These observations were "some" evidence of intoxication, and that is all that is required to satisfy due process. This claim fails.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Naylor to the relief he seeks. Accordingly, Mr. Naylor's petition for a writ of habeas corpus must be **denied** and the action **dismissed with prejudice.** Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 8/21/2026

Sarah Evans Barker

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

JOHN NAYLOR
128761
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Evan Matthew Comer
Office of Indiana Attorney General
evan.comer@atg.in.gov